UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
PADUCAH DIVISION
CASE NO. 5:10-CV-220

CALLENDAR, et al.                                                                                               PLAINTIFFS

V.

COASTAL INTERNATIONAL SECURITY, INC., et al.                                        DEFENDANTS

### MEMORANDUM OPINION & ORDER

This matter is before the Court upon the parties' Joint Motion to Approve the Rule 23 Class Action Settlement Agreement (DN 38). This matter is now ripe for decision. For the following reasons, the parties' joint motion (DN 38) is DENIED.

### BACKGROUND

This putative class action was brought on behalf of individuals formerly employed by Defendant Coastal International Security ("Coastal") as armed guards at Fort Campbell and Fort Knox within the Commonwealth of Kentucky. Plaintiff Kenneth Callendar was formerly employed by Coastal at Fort Campbell. Plaintiff Ginger Starret was formerly employed by Coastal at Fort Knox.[1]

These Class Representatives allege that, on July 1, 2010, Coastal offered to pay a $1,500 retention bonus to those employees who continued their employment through September 30, 2010, the date upon which Coastal's contract to provide armed guard services at Fort Campbell and Fort Knox ended. The Class Representatives further allege that Coastal rescinded the bonus offer after employees had continued their employment in reliance on Coastal's offer of a retention bonus. Plaintiffs allege breach of contract and wage and hour claims arising under

---

[1] Plaintiffs original complaint named only Callendar. However, Plaintiffs amended their complaint on February 23, 2011 to add Starret as a plaintiff.

various laws, including KRS Chapter 337, the National Labor Relations Act, and Kentucky common law.

Discovery revealed that a memo rescinding the retention bonus offer was issued to all guards at Fort Knox on July 12, 2010.  However, there is conflicting evidence as to when the rescission memo was issued to guards at Fort Campbell.  The Class Representatives believe that the rescission memo was not issued until as late as the end of August 2010.  Because under Kentucky law a unilateral offer must be fulfilled unless it is rescinded before substantial performance has occurred, the parties assert that the viability of the putative class members' state law claims depended upon whether the guards had substantially performed at the time the retention bonus offer was rescinded.  The parties therefore assert that, "Given the uncontested evidence indicated that Coastal had rescinded its bonus offer at Ft. Knox within a mere handful of days after making the offer, claims for bonus money and related claims by guards at Ft. Knox appear to be without merit."  DN 38 at p. 3.

As a result of settlement negotiations, the parties agreed to the proposed settlement agreement whereby class members would receive varying settlement amounts depending on how long each guard at Fort Campbell worked after the bonus was offered.  The parties' rationale for this apportionment was that the longer the guard worked, the more likely he could successfully argue that he had substantially performed.  Specifically, the proposed settlement agreement provided for the following terms:

1. The Class Representatives will move to certify and Coastal will not oppose a class (certified for settlement purposes only) defined as: All individuals who were formerly employed by Coastal International Security, Inc. as armed guards at Fort Knox or Fort

    Campbell in the Commonwealth of Kentucky between July 1, 2010 and September 30, 2010.

2. Coastal would pay the gross sum of $90,000, which would include attorneys' fees and costs, for the resolution of all claims contained within the amended complaint.  Eligible claimants would be compensated commensurate with the number of days worked at Fort Campbell after the retention bonus notice was posted.  After subtracting attorneys' fees, costs, and the employer's share of payroll taxes, the amount of compensation for the guards would range from $50 to $990 (excluding the Class Representatives).  Kenneth Callendar would receive $3000, and Ginger Starret would receive $1000.  The actual compensation to class members would total $61,080.

3. In exchange, each class member who did not submit an exclusion request form during the opt-out period would fully release Coastal from any and all FLSA, NLRA, Kentucky state wage and hour, retaliation, breach of contract, and rescission of contract claims that were alleged, or that could have been alleged, in this action.

The parties now seek this Court's preliminary approval of the proposed settlement agreement.

## DISCUSSION

The parties' agreement to settle this matter is not a sufficient basis for approving the proposed settlement.  The settlement would require this Court to certify a class and to dispose of the claims of its members.  Thus, this Court has an independent obligation to protect class members.  *Silber v. Mabon,* 957 F.2d 697, 701 (9th Cir.1992).  Even for a class certified solely for settlement purposes, the Court must first make a preliminary determination that the proposed class satisfies the criteria set out in Federal Rule of Civil Procedure 23(a) and at least one of the subsections of Rule 23(b).  *See Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 613-14 (1997).

Where the parties have reached a settlement agreement prior to class certification, "the court 'must pay undiluted, even heightened, attention to class certification requirements' because, unlike in a fully litigated class action suit, the court will not have future opportunities 'to adjust the class, informed by the proceedings as they unfold.'" *Alberto v. GMRI, Inc.,* 252 F.R.D. 652, 658 (E.D.Cal.2008) (quoting *Amchem Prods. Inc. v. Windsor,* 521 U.S. 591, 620 (1997)). "The parties cannot 'agree to certify a class that clearly leaves any one requirement unfulfilled,' and consequently the court cannot blindly rely on the fact that the parties have stipulated that a class exists for purposes of settlement." *Id.* (quoting *Berry v. Baca,* 2005 WL 1030248 at *7 (C.D. Cal. May 2, 2005)); *see also Amchem,* 521 U.S. at 622 (observing that nowhere does Rule 23 say that certification is proper simply because the settlement appears fair).

Accordingly, the Court will begin its analysis by making a preliminary determination of whether the proposed class meets the Rule 23 requirements.[2] First, the moving party must "satisfy Rule 23(a)'s requirements of numerosity, commonality, typicality, and adequacy of representation." *Coleman*, 296 F.3d at 446; *see* Fed. R. Civ. P. 23(a). The district court must conduct "a rigorous analysis" to ensure that "the prerequisites of Rule 23(a) have been satisfied." *Gen. Tel. Co. v. Falcon*, 457 U.S. 147, 161 (1982); *see also Ball v. Union Carbide Corp.*, 385 F.3d 713, 727 (6th Cir. 2004); *In re Am. Med. Sys.*, 75 F.3d at 1078-79. A court may not certify a class that fails to satisfy all four prerequisites. *Ball*, 385 F.3d at 727. Second, in addition to satisfying Rule 23(a)'s prerequisites, the moving party "must demonstrate that the class fits under one of the three subdivisions of Rule 23(b)." *Coleman*, 296 F.3d at 446; Fed. R. Civ. P.

---

[2] The Court is aware that the parties did not move to certify the class for settlement purpose within their motion for preliminary approval of the proposed settlement, and therefore did not address the Rule 23(a) and Rule 23(b) requirements. However, the Court find that briefing of the issue with respect to the proposed class is unnecessary.

23(b); *see also Ball*, 385 F.3d at 727; *Sprague v. Gen. Motors Corp.*, 133 F.3d 388, 397 (6th Cir.1998) (en banc).

Here, the parties have agreed that the class representatives will move to certify and Coastal will not oppose the following class: All individuals who were formerly employed by Coastal International Security, Inc. as armed guards at Fort Knox or Fort Campbell in the Commonwealth of Kentucky between July 1, 2010 and September 30, 2010. The Court finds that this proposed class does not meet the Rule 23(a)(4) requirement that the named parties "will fairly and adequately protect the interests of the class." Accordingly, the Court will limit its discussion to that prerequisite to class certification.

In *Amchem Products, Inc. v. Windsor*, the Supreme Court affirmed the reversal of a district court's order certifying a class for purposes of settlement in an asbestos action. 521 U.S. 591. In that case, nine lead plaintiffs brought suit on behalf of all persons who (1) had been exposed–occupationally or through the occupational exposure of a spouse or household member–to asbestos attributable to a defendant, or (2) whose spouse or family member had been so exposed. *Id*. at 602. While the majority of the named plaintiffs alleged that they or a family member had already suffered various physical injuries as a result of the exposure, the "exposure-only" claimants alleged that they had not yet manifested any asbestos-related condition. *Id*. at 603. There were no subclasses delineated; instead, all named plaintiffs were designated as representatives of the entire class. *Id*. The parties' proposed settlement agreement involved compensation for present and future asbestos-related personal injury or death. *Id*.

The Supreme Court found that the class approved by the district court for settlement purposes could not satisfy the Rule 23(a)(4) requirement that the named parties "will fairly and adequately protect the interests of the class." *Id*. at 625. In making this determination, the

Supreme Court noted that "[t]he adequacy inquiry under Rule 23(a)(4) serves to uncover conflicts of interest between named parties and the class they seek to represent." *Id*. "A class representative must be part of the class and possess the same interest and suffer the same injury as the class members." *Id*. at 625-26 (internal quotations omitted). With respect to the particular settlement class in *Amchem*, the Court found that the interests of those within the single class were not aligned in significant respects. *Id*. at 626. The "terms of the settlement reflect[ed] essential allocation decisions designed to confine compensation and to limit defendants' liability." *Id*. at 627. Namely, the settlement agreement extinguished–without compensation– family members' loss of consortium claims and the exposure-only plaintiffs' claims for emotional distress, enhanced risk of disease, and medical monitoring, and for "pleural" claims involving lung plaques but no physical impairment. *Id*. Thus, the settling parties "achieved a global compromise with no structural assurance of fair and adequate representation for the diverse groups and individuals affected." *Id*.

The Supreme Court then went on to cite with approval the Second Circuit's analysis of this Rule 23(a)(4) requirement in the context of settlement approval:

> "[W]here differences among members of a class are such that subclasses must be established, we know of no authority that permits a court to approve a settlement without creating subclasses on the basis of consents by members of a unitary class, some of whom happen to be members of the distinct subgroups. The class representatives may well have thought that the Settlement serves the aggregate interests of the entire class. But the adversity among subgroups requires that the members of each subgroup cannot be bound to a settlement except by consents given by those who understand that their role is to represent solely the members of their respective subgroups." *In re Joint Eastern and Southern Dist. Asbestos Litigation,* 982 F.2d 721, 742-743 (1992), modified on reh'g *sub nom. In re Findley,* 993 F.2d 7 (1993).

*Id*. at 627. The Supreme Court ultimately found that there was no assurance that the named plaintiffs in *Amchem* operated under a proper understanding of their representational

responsibilities. *Id*. Thus, the district court's certification of the class for settlement purposes was improper.

The *Amchem* Court explained that the settlement is relevant to a determination of whether a proposed class meets the requirements for certification under Rule 23. *Id*. at 619. Specifically, it found that a close inspection of the settlement terms is proper when determining whether the class members' interests are adequately represented. *Id*. at 619-20. *Amchem* therefore allows courts, in assessing the adequacy of representation, to examine a settlement's substance for evidence of prejudice to the interests of a subset of plaintiffs.

Looking to the proposed settlement agreement here, only class members who were employed at Fort Campbell would receive compensation in release of their claims; the subset of class members who were employed at Fort Knox would receive *nothing* of value in consideration for a release of their claims. With respect to this detail, the parties have explained that, after discovery, they determined that the Fort Knox employees' claims appeared to be without merit. However, as the Second Circuit has noted, "how can the value of any subgroup of claims be properly assessed without independent counsel pressing its most compelling case?" *In re Literary Works in Electronic Databases Copyright Ligitation*, 654 F.3d 242, 253 (2d Cir. 2011). This is why the Supreme Court has counseled that subclasses may be necessary when categories of claims have different settlement values. *Id*. (citing *Ortiz v. Fibreboard Corp.*, 527 U.S. 815 (1999)).

It may be that the Fort Knox guards' claims are without merit and that the overall settlement is fair in this respect; however, the possible fairness of a settlement cannot eclipse the Rule 23 requirements for certification. *Ortiz*, 527 U.S. at 858-59. The Court must find independently that the interests of all class members are adequately represented. Like in

*Amchem*, the proposed settlement terms in this case reflect essential allocation decisions that limit Coastal's liability to one group of the class–former employees at Fort Campbell.  There are greatly divergent interests between class members because the claims of the two groups are of different strengths and therefore command a different settlement value.  *See Ortiz*, 527 U.S. at 254.  Although the guards at Fort Knox were purportedly represented by Class Representative Starret, there is no assurance that Starret operated under a proper understanding of her representational responsibilities. *See Amchem*, 521 U.S. at 627.  The interests of the armed guards at Fort Knox can only be protected by the formation of a subclass and the advocacy of independent counsel.  Accordingly, the Court finds that the proposed class does not satisfy the Rule 23(a)(4) requirement that the named parties "will fairly and adequately protect the interests of the class."  Therefore, the Court need not determine whether the proposed settlement merits preliminary approval.

## CONCLUSION

For the foregoing reasons, the parties' Joint Motion to Approve the Rule 23 Class Action Settlement Agreement is DENIED.